McCord, Appellant, vs. Edward Hines Lumber Company, Respondent.

*October 7—October 24, 1911.*

*Landlord and tenant: Removal of docks from leased land: Protection of slips: Contract construed.*

> Upon land bordering upon Superior Bay were docks and slips for shipping lumber. The docks belonged to a lessee of the land who had the right to remove them. In an agreement whereby the lessor consented to an assignment of the lease it was provided that "if the docks or any part thereof are removed they shall be so removed as to leave the slips intact, and such slips shall be protected from injury." No such stipulation was contained in the original lease and no additional consideration entered into the consent agreement. *Held*, that under the quoted provision the lessee was bound, in case the docks were removed, to protect the slips from injury in the process of such removal, but not to protect them from filling in or other injury thereafter.

Appeal from a judgment of the superior court of Douglas county: Charles Smith, Judge. *Affirmed.*

At the times in question in this action the plaintiff and the McCord Lumber Company were the owners of certain property bordering on Superior Bay. The plaintiff subsequently became the exclusive owner of this property. Prior to 1899, the time plaintiff and his co-owner leased the lands in question to the defendant, a sawmill had been constructed upon this property. There had also been constructed thereon three open lumber docks and three slips for the purpose of conducting the business of manufacturing and shipping lumber. In 1899 the sawmill and all the docks and tramways, etc., were sold to the defendant, and at the same time a lease was made to the defendant for a period of ten years of all the lands upon which the mill and the other property were situated, with an option for its renewal for five years. The lease provided for an annual rental of $300 and the payment of the

taxes by the lessee, also that the lessee was not to sublet the premises without the written consent of the lessor.    The lease stipulated:

"At the expiration of this lease, the lessee shall have the right to remove all buildings and improvements thereon, and shall have a reasonable time therefor."

In 1900 the defendant transferred the property owned by it, and with the consent of the plaintiff assigned the lease. In 1903 the mill property was burned and the subtenant surrendered the property and the land to the defendant.    It was thereupon agreed between the plaintiff and the defendant that to restore the sawmill and to carry out the use of the premises under the original lease by a sublease would promote the best interests of both parties.    To accomplish these purposes the defendant then sold the property which had not been destroyed by the fire, including the docks, tramways, etc., to the Murray-McCann Lumber Company of Ashland, and also made an assignment of the lease to the company.    The plaintiff on November 2, 1903, consented to assignment by a written agreement between the plaintiff and the defendant.    By this agreement the defendant guaranteed the payment of the rental and the taxes as agreed upon in the original lease to the defendant and also agreed to perform all the covenants on the part of the lessee.    In addition to these agreements it was specified "also, that if the docks or any part thereof are removed they shall be so removed as to leave the slips intact, and such slips shall be protected from injury."

The Murray-McCann Lumber Company entered upon the premises, rebuilt the mill, and operated it until some time in the year 1907, and while still in possession of the premises sold and removed the mill and much of the dock structures and piling.    The defendant has not dredged the slips nor constructed any protection for keeping them in the condition they were in prior to the removal of the docks, and the plaintiff claims that the slips have filled in and will fill in because

the defendant has removed the greater part of the dock piling and has omitted to construct a suitable protection in place thereof to prevent the slips from filling in.

The jury were instructed that under the terms of the consent to the assignment "the defendant was not required to protect the slips from filling to any greater extent than they were protected in that respect by the docks and piling constituting a part thereof as they existed when the Murray-McCann Lumber Company had completed its work on said premises and was ready to surrender the same. In other words, the defendant was not required to furnish any better or greater protection to the slips from filling in than that afforded by the docks at the time they were removed."

The jury under the instructions returned a verdict for the defendant. This is an appeal from the judgment dismissing the action.

For the appellant there was a brief by *Luse, Powell & Luse,* and oral argument by *L. K. Luse.*

For the respondent there was a brief by *Olin & Butler,* attorneys, and *Grace & Hudnall,* of counsel, and oral argument by *J. M. Olin* and *H. H. Grace.*

SIEBECKER, J. It is conceded that the defendant under the original lease and the agreement of November 2, 1903, whereby the plaintiff consented to the subletting of the premises by the defendant, had the right to remove the mill and the dock. The court instructed the jury that "the word 'dock' or 'docks' . . . as used by the parties to this action in the agreement in question, includes all of the round piling and sheet piling, if any, and all of the caps and cross-ties placed on the tops of such round piling in the construction of the docks and superstructure as described by the evidence in this case." No exception is taken by the appellant to this interpretation of the terms of the agreement, and we take it that the agreement is to be considered in the light of this meaning

of the term. The clause of the contract upon which the plaintiff rests his right to recover is, "that if the docks or any part thereof are removed they shall be so removed as to leave the slips intact, and such slips shall be protected from injury." The plaintiff contends that this stipulation imposes on the defendant the obligation to protect the slips from future injury from whatever cause if the docks should be removed by its authority under the lease. Applying this idea to the subject matter of the contract, we have an agreement requiring the defendant to erect some structure without specification as to its nature and kind, the manner in which it is to be accomplished, or the time during which it will be the duty of the defendant to maintain it. Under such an interpretation of the terms of the stipulation it is difficult to ascertain what the parties contemplated, for there is nothing in it to suggest that they agreed on any particular protection or whether they intended the time for maintenance to be limited or perpetual. Nor can we infer from such implications that it was understood in what way this protection was to be accomplished. The cost of the maintenance of the protection the plaintiff now claims should have been erected is so disproportionate to all the benefits received by the defendant under the lease as to negative the idea that it was contemplated by the parties. We have, then, a situation so full of uncertainties in so many respects, with conditions so burdensome in their weight, as to forbid such a construction if in the light of the subject matter of the transaction the language used is susceptible of a more reasonable interpretation. The facts that no such stipulation is contained in the original lease and that no additional consideration entered into the consent agreement to a subletting of the premises tend to show that this stipulation imposes no obligations additional to those contained in the original lease, and that it was designed to specify the manner of performing the obligations already imposed.

Reading the language of the clause in question in the light of these considerations and examining its context and the words employed in their natural and ordinary sense, it seems evident that the parties did not have in mind the implication the plaintiff now invokes, but rather that the parties contemplated a construction thereof that should include no more than the defendant contends that it embraces. An examination of the language used in the first part of the clause definitely indicates that they were treating the subject with a view to having the slips kept intact while the docks were being removed, and that the last clause applies to the same thing but specifies that the docks shall be so removed that the slips will be protected from injury. This construes the parts of the sentence together and as dealing with one subject, leads to a reasonable and natural conclusion, frees it from all uncertainty, including the implication of plaintiff's contention, and harmonizes it with the contents of the original agreement of the parties. We are therefore led to the conclusion that under the clause in question the defendant was obligated, if it removed the docks, to do the work in a way that would leave the slips intact, and in removing them to do all things reasonably necessary to protect the slips from injury. In this view the plaintiff is not entitled to have the slips protected against future injury.

As we understand the record there is no basis for claiming damages for injury to the slips in not leaving them intact or in not properly protecting them from injury in the process of the removal of the docks, and hence the judgment awarded must stand.

*By the Court.*—Judgment affirmed.

MARSHALL, J., took no part.